IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **ROBERT DWAYNE BISHOP**, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:09cv00033 |
| | ) | |
| v. | ) | |
| | ) | **OPINION** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF** | ) | By: James P. Jones |
| **SOCIAL SECURITY**, | ) | Chief United States District Judge |
| | ) | |
| Defendant. | ) | |

*Julie Atkins, Harlan, Kentucky, and H. Ronnie Montgomery, Montgomery Kinser Law Offices, P.L.C., Jonesville, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III, Sandra Romagnole, Assistant Regional Counsel, and Robert Kosman, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

The plaintiff, Robert Dwayne Bishop, filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying his claims for disability insurance benefits and supplemental security income under the Social Security Act ("Act") 42 U.S.C.A. § 401-

433, 1381-1383d (West 2003 & Supp. 2009). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g) and § 1383(c)(3).

Bishop protectively filed for benefits in May 2007, alleging disability as of October, 2006, due to a neck injury, carpal tunnel syndrome in his hands and inadequate intelligence. His claims were denied initially and upon reconsideration. A hearing was held before an administrative law judge ("ALJ") at which Bishop was present and represented by counsel. A vocational expert ("VE") testified at the hearing. The ALJ denied Bishop's claims, and the Social Security Administration's Appeals Council denied Bishop's request to review the ALJ's opinion. Bishop filed this Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment, and have briefed the issues. The case is ripe for decision.

II

Bishop was born in 1972, which classifies him as a "younger individual" under 20 C.F.R. §§ 404.1563 and 416.963 (2009). Bishop received only a seventh-grade education, and his work experience is limited to jobs as a tree climber and foreman for tree removal service companies.

Bishop has not engaged in substantial gainful employment since filing for disability.

In October, 2006, Bishop was treated for injuries resulting from a tree falling on him while he was working. X rays did not reveal any fractures. Bishop was diagnosed with a head injury, left shoulder contusion and paresthesia to the upper extremities bilaterally. He was prescribed pain medication and instructed not to lift more than 15 pounds. Later in October, 2006, Bishop sought treatment for headaches that occurred when he was performing work that required overhead reaching. Bishop was prescribed pain medication and instructed to refrain from overhead work. However, on October 23, 2006, Bishop was cleared to return to regular duty.

In January, 2007, Bishop again complained of neck pain. A magnetic resonance imaging scan of the cervical spine revealed spondylosis at C3-4, C5-6 and C6-7, spinal canal and formal stenosis at C5-6 and C6-7 and disc protusion could not be excluded. Throughout the record there is evidence that Bishop continued to complain of neck pain, and he alleged that it began to radiate to his arms. In March, 2007, Bishop was diagnosed with a herniated cervical disc with spondylosis. In April, 2007, he underwent a cervical discectomy and fusion, at which time a locking plate was inserted at C5 through C7. Even after the surgery, Bishop continued to complain of

neck pain. In November, 2007, the surgeon who performed Bishop's neck fusion opined that he had a 25 percent impairment of the whole person due to an alteration in motion segment integrity.

In July, 2008, the Slosson Intelligence Test was administered to Bishop and the results indicated that he was "probably within the mildly mentally handicapped range." (Record ("R.") at 321.) Further, the Wide Range Achievement test was given to Bishop, and his reading and mathematics scores placed him in the first percentile for his age group. Bishop's score on the Wechsler Adult Intelligence Scale – Third edition, indicated that he was of borderline intellectual functioning.

In August, 2008, Bishop sought counseling, and admitted that he smoked, but stated that he quit using marijuana and drinking hard liquor. Bishop claimed to have "bad days" five days out of the week, and they were characterized by him not wanting to move, being mad and ranting with little provocation. (R. at 338.) The counselor opined that due to his limited intellectual functioning, Bishop could not handle his own finances. Bishop was diagnosed with moderate bipolar disorder, most recent episode depressed, moderate panic disorder without agoraphobia and recent and remote memory impairment. Moreover, it was noted that he was of borderline intellectual functioning, was functionally illiterate, and had

marginal arithmetic skills. Bishop was assessed with a Global Assessment of Functioning ("GAF") score of 50.[1]

After a review of the medical evidence, the ALJ found that Bishop's severe impairments of degenerative disc disease of the lumbar and cervical spine did not meet or medically equal one of the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1. Also, the ALJ recognized that Bishop was illiterate. The ALJ determined that Bishop retained the residual functional capacity ("RFC") to perform light work that allows frequent postural changes and does not require overhead lifting or overhead use of the arms. Thus, Bishop's past relevant work experience was excluded. The VE, Donna Bardsley, testified that, even with the aforementioned limitations, there were jobs existing in the national and regional economies that Bishop could perform. Among the jobs available would be a hand packager, a sorter, an assembler, and an inspector. Thus, the ALJ found that Bishop was not disabled. Bishop argues that the ALJ's decision was erroneous. I disagree.

---

[1] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders Fourth Edition ("DSM-IV") 32 (Am. Psychiatric Assoc. 1994).

A GAF of 41-50 indicates "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning ...." DSM-IV at 32.

III

The plaintiff bears the burden of proving that he is suffering from a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 426.920(a)(4) (2009). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *Bennett v. Sullivan*, 917 F.2d 157, 159 (4th Cir. 1990). The fourth and fifth steps of the inquiry require an assessment of the claimant's RFC, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in

the national economy. *See Reichenbach v. Heckler*, 808 F.2d 309, 311 (4th Cir. 1985).

In accordance with the Act, I must uphold the ALJ's findings if substantial evidence supports them and they were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). This standard "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). It is not the role of this court to substitute its judgment for that of the Commissioner. *See Id*.

Bishop's first challenge to the ALJ's decision argues that the ALJ did not adequately explain the rejection of the treating neurosurgeon's opinion. Specifically, Bishop claims that the ALJ rejected the 25 percent permanent impairment Dr. Corradino attributed to him, which Bishop contends is consistent with the idea that Bishop is restricted from engaging in repetitive pushing and pulling. However, there is no evidence to suggest that Dr.

Corradino's opinion was rejected. In fact, that opinion is specifically mentioned in the ALJ's written opinion, as is other findings of Dr. Corradino. Furthermore, there is no indication that the whole person impairment has an impact on pushing and pulling.

In his reply, Bishop attempts to clarify the previously mentioned discrepancies by claiming that based on other doctor's opinions, he was limited in using his upper extremities, and that Dr. Corradino's opinion stands for the proposition that those are permanent impairments. This creative, yet strained interpretation of Dr. Corradino's opinion is not persuasive. The opinion was given to assist in Bishop's Workers Compensation case, and at no point does it suggest that it pertains to his ability to push or pull, nor does it seek to solidify other doctor's statements regarding Bishop's ability to push or pull.

Next, Bishop contends that the ALJ erred by declining to adopt restrictions from Drs. McGuffin and Pennington after suggesting he would rely on their findings. Dr. McGuffin, whose opinion was affirmed by Dr. Pennington, indicated, without further explanation, that Bishop's abilities to push and pull with his upper extremities were limited. However, contrary to Bishop's assertion, the doctors did not find that he was prohibited from the repetitive use of his hands. To the contrary, the doctors stated that Bishop

was unlimited in his abilities to handle, finger, and feel, finding that he was only limited in his ability to reach overhead. Further, the ALJ did not suggest that he was solely following the findings of Drs. Pennington and McGruffin, instead he considered and based his decision upon the objective medical evidence of all providers.

Also, Bishop argues that the ALJ's failure to address the VE's opinion, that the inability to use his hands repetitively would preclude employment, is an error warranting remand. This argument also must fail. The VE's response to the hypothetical in question was rendered irrelevant by the ALJ's finding that Bishop was not limited in his ability to repetitively use his hands. As such, the ALJ followed the hypothetical regarding the limitations he found applicable, i.e., the need for postural changes and no overhead work.

Bishop cites *Crider v. Harris,* 624 F.2d 15 (4th Cir. 1980), for the proposition that the ALJ must address a VE's testimony which is favorable to the claimant. However, in that case, the court was dealing with a pro se claimant. *Id*. at 16. The court found that appearing pro se entitled the claimant to "sympathetic assistance" from the ALJ and that the ALJ should assume a more "active role." *Id*. Further, under such circumstances an ALJ is held to a higher duty of care and responsibility. *Id*. After discussing the

heightened standards of an ALJ dealing with a pro se claimant, the court found that the favorable VE testimony should have been addressed. *Id*. Here, Bishop was and remains represented by counsel. Accordingly, the ALJ was under no increased duty to advocate for him, and it was proper to only discuss the pertinent VE testimony that was consistent with his RFC finding.

Bishop next argues that the ALJ's rejection of the mental restrictions imposed pursuant to a psychological evaluation performed by William Stanley, M.Ed. is not supported by substantial evidence. The ALJ pointed out that Stanley was a one-time examining source, who was referred by Bishop's attorney, and based his findings on subjective complaints rather than objective evidence. Further, the ALJ noted that Bishop had not sought, nor received, mental health treatment.

Stanley assessed Bishop with moderate bipolar disorder, most recent episode depressed, and moderate panic disorder without agoraphobia. Additionally, Bishop was found to be functionally illiterate and to have borderline intellectual functioning. Consistent with the moderate disorders, the ALJ found that Bishop's mental restrictions are mild limitations and are not "severe" as defined by the Act. Moreover, the ALJ decided that the finding of borderline intellectual functioning was contradicted by Bishop's

past skilled and semi-skilled employment. Furthermore, the ALJ's decision is consistent with the evidence of record, which consistently found Bishop to be in no distress, to be alert and oriented, to be cooperative and to display a normal affect.

Finally, Bishop claims that the ALJ proposed a hypothetical to the VE that did not reflect the evidence, which led to the VE citing jobs that are beyond his abilities. "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all . . . evidence in the record . . . and it must be in response to proper hypothetical questions which fairly set out all claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (citations omitted). The Commissioner may not rely upon the answer to a hypothetical question if the hypothesis fails to fit the facts. *See Swaim v. Califano*, 599 F.2d 1309 (4th Cir. 1979). The determination of whether a hypothetical question fairly sets out all of a claimant's impairments turns on two issues: (1) whether the ALJ's finding as to the claimant's residual functional capacity is supported by substantial evidence; and (2) whether the hypothetical adequately sets forth the RFC as found the by ALJ.

The ALJ's RFC findings were supported by substantial evidence. While Bishop claims that he is more limited than the ALJ found, the

objective evidence supports the ALJ's findings.  The objective evidence showed that Bishop had good grip strength and overall strength, and it was observed that he could occasionally lift and carry 50 pounds and frequently lift and carry 25 pounds.  Further, it was indicated that Bishop could push and pull 84 pounds occasionally and 42 pounds frequently.  Also, in September 2007, Bishop exhibited a normal, functional range of motion.  In light of the objective evidence, the ALJ's limitations, that Bishop only perform light work and no overhead work, are supported by substantial evidence.

Thus, the inquiry is whether the hypothetical accurately set forth that residual functional capacity.  The hypothetical was proper.  A hypothetical was put before the VE with the exact residual functional capacity that the ALJ adopted.  In response, the VE identified jobs that exist in significant numbers in the national and regional economies.  As the hypothetical was proper, the jobs given in response thereto were not beyond Bishop's capabilities.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the Commissioner's Motion for Summary

Judgment will be granted. An appropriate final judgment will be entered affirming the Commissioner's final decision denying benefits.

        ENTER: May 24, 2010

        /s/ James P. Jones
        Chief United States District Judge